UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

JAMES D. FOSTER )
)
v. ) NO. 2:04-CV-317
)
JO ANNE B. BARNHARDT, )
Commissioner of Social Security )

**MEMORANDUM OPINION**

The plaintiff James D. Foster has filed a motion for summary judgment on his complaint to obtain judicial review of the final decision of the defendant Commissioner of Social Security Jo Anne B. Barnhardt to deny his application for disability insurance benefits under the Social Security Act. The defendant has filed a motion for summary judgment.

Mr. Foster was born in 1952 and was 51 years old at the time of his administrative hearing. [Tr. 264]. He completed high school and has relevant past work experience as an aircraft mechanic, maintenance mechanic, and maintenance supervisor. [Tr. 47, 264]. Mr. Foster alleges he is disabled as of August 8, 2002, from pain in his chest and back, loss of feeling on his left side, heart trouble, high blood pressure, fatigue, left leg numbness, and drowsiness from medications. [Tr. 47]. Based upon a finding that his medical impairments were severe but not severe enough,

the Administrative Law Judge [ALJ] found that Mr. Foster was not disabled as defined by the Social Security Act. [Tr. 49].

In April 1997, Mr. Foster went to the emergency room because he was mowing the lawn when his left arm suddenly went numb and his chest began to ache. [Tr. 141]. A thallium cardiac stress procedure indicated suspicion for inferoseptal myocardial ischemia. [Tr. 132]. A cardiac catheterization was also performed, with results that indicated no significant coronary artery disease. [Tr. 134].

A cardiac catheterization performed in April 1998 indicated mild left ventricular dysfunction, mild disease in the left anterior descending artery, and a normal right coronary artery. [Tr. 166-67].

In May 1999, a lateral chest x-ray showed a stable appearance of Mr. Foster's chest with no acute disease. [Tr. 203].

An x-ray taken of Mr. Foster's cervical spine in May 2000 indicated mild degenerative endplate spondylosis bordering the C5-6 and C6-7 disc levels. [Tr. 202].

In July 2000, Mr. Foster reported to his physician that medication for his arthritic pain was helping and that overall he was feeling fairly well. [Tr. 183].

In November 2000, Mr. Foster complained of his hands and feet feeling very cold and swollen. [Tr. 181]. By December 2000, the condition had improved with

medication. [Tr. 180].

In April 2001, a cardiologist evaluated Mr. Foster. [Tr. 214-15]. Mr. Foster complained of "swelling in the upper extremities associated with chest pain and shortness of breath, especially at night." [Tr. 214]. The doctor indicated he thought Mr. Foster's symptoms were non-cardiac in nature, and he might be better off seeing a neurologist. [*Id.*].

In May 2001, a sleep study performed on Mr. Foster failed "to indicate the presence of a significant sleep-related breathing disorder." [Tr. 153].

In July 2001, a complete cervical x-ray was performed on Mr. Foster. [Tr. 211]. The spine was in normal alignment, but there were some degenerative changes. [*Id.*].

An electrodiagnostic study report was conducted on Mr. Foster in August 2001 and yielded results of no evidence of cervical radiculopathy and no evidence of upper extremity neuropathy or nerve entrapment. [Tr. 225].

In September 2001, a portable chest study showed Mr. Foster's heart was normal. [Tr. 146].

In April 2002, Mr. Foster continued to have numbness in his left side and wondered aloud to his physician if it might be a side effect of a medication he was taking. [Tr. 175]. The physician doubted that to be the case. [*Id.*]. Later that same

month, the physician noted Mr. Foster had become increasingly irritable and suggested counseling and anxiety management. [Tr. 174].

In May 2002, Mr. Foster underwent an x-ray of his thoracic spine which indicated mild degenerative disc disease at the T9-10 through T11-12 disc levels. An x-ray of his lumbar spine was taken at the same time and indicated mild degenerative endplate spondylosis bordering the L3-4 and L4-5 disc. [Tr. 197].

In June 2002, Mr. Foster met with a nurse practitioner at Pain Medicine Associates, P.C. [Tr. 230-32]. Mr. Foster was diagnosed with peripheral neuropathic pain and cervical spondylosis. [Tr. 231]. An MRI of his spine and selective films of his cervical spine were recommended. [*Id.*]. The MRI showed degenerative disc disease. [Tr. 229].

In September 2002, Mr. Foster's back pain was relieved by 90 percent following a procedure in his thoracic area. [Tr. 227].

In October 2002, Karl Konrad, Ph.D., M.D., evaluated Mr. Foster in connection with his application for disability benefits. [Tr. 234-36]. Dr. Konrad noted that his physical examination was unremarkable, and that Mr. Foster had no impairment-related physical limitations. [Tr. 236].

In November 2002, another doctor completed a Physical Residual Functional Capacity [RFC] Assessment form for Mr. Foster. [Tr. 237-44]. According to the form,

4

Mr. Foster could occasionally lift/carry 100 pounds, frequently lift/carry 50 pounds, and sit/stand/walk for six hours in an eight-hour workday. [Tr. 238]. The doctor did not recommend any other physical limitations.

At Mr. Foster's administrative hearing held on September 16, 2003, the testimony of Mr. Foster, medical expert Dr. Susan Bland, and vocational expert JoAnn Bullard was received into evidence. [Tr. 264-99]. Mr. Foster testified he last worked in an aluminum wheel factory as a working maintenance supervisor. [Tr. 266]. He testified he is disabled because he is unable to lift anything due to a bad back and is unable to hold anything due to a painful left hand. [Tr. 268]. He also has a very painful neck, which feels like a "dead throb all the time." [Tr. 269]. Mr. Foster testified that his left hand swells during the day to the point he cannot take off his ring. [Tr. 271]. His hand is also often numb. [*Id.*]. Mr. Foster takes medication for his back and neck pain as well as for his chest pains. [Tr. 274, 277-78]. He turns and twists during the night and is unable to sleep well. [Tr. 280].

Dr. Susan Bland testified next. [Tr. 287-95]. According to the doctor, Mr. Foster has degenerative changes in the cervical, thoracic, and lumbar spine area and hypertension. [Tr. 288]. She testified that as for the rest of his complaints, there was "not objective evidence in the record" to support them. [*Id.*]. Dr. Bland proposed that because of the degenerative changes in his spine, Mr. Foster could lift/carry 20

5

pounds occasionally and 10 pounds frequently. [Tr. 288-89]. Repetitive bending, stooping, climbing of ladders, working at unguarded heights, working with hazardous machinery, working overhead with the left arm, and repetitive gripping and grasping would be limited for Mr. Foster. Finally, his ability to work in extreme cold environments would be limited. [Tr. 289].

Vocational expert JoAnn Bullard testified next. [Tr. 295-99]. She characterized Mr. Foster's past relevant work as medium and heavy skilled. [Tr. 297]. The ALJ then asked her to consider a person of Mr. Foster's age, education, work history, and physical limitations as testified to by Dr. Bland. [Tr. 297-98]. The vocational expert indicated such a person could perform light work as a cashier, textile checker, and garment bagger. [Tr. 298]. The ALJ then asked Ms. Bullard to assume the same person from the previous hypothetical and apply Mr. Foster's administrative hearing testimony to that person. [*Id.*]. The vocational expert indicated such a person would be precluded from all occupations because of the level of pain to which he testified, the amount of time he needed to lay down each day, and the difficulty he experienced with gripping and reaching. [Tr. 299].

The ALJ ruled that Mr. Foster was not disabled because, while the medical evidence indicated that he had degenerative disc disease of the cervical, thoracic, and lumbar spine and hypertension, these impairments were not severe enough. [Tr. 49].

6

The ALJ then found he could perform light work such as a cashier, textile checker, and garment bagger. [Tr. 52].

This court must affirm an ALJ's conclusions unless the ALJ applied incorrect legal standards or made findings of fact unsupported by substantial evidence in the record. 42 U.S.C. § 405g. "Substantial evidence" is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion." *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001). Accordingly, this court may not try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility. *Walters v. Commissioner of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997).

Mr. Foster requests summary judgment and challenges the ALJ's finding that his allegations of pain and other symptoms were not totally credible. The ALJ indicated Mr. Foster's allegations of disabling pain and other symptoms were "not credible or supported by the overall medical evidence of record." [Tr. 51]. The ALJ specifically noted Mr. Foster's physical testing produced minimal or negative findings, he had issues of non-compliance (not ceasing smoking, not losing weight, failing to take medications and undergo testing), he had an active life, his palms were dirtied and

callused (contrary to his reportedly limited daily activities), and he did not appear in pain during the 45-minute administrative hearing. [Tr. 51]. The ALJ had substantial evidence to question Mr. Foster's credibility. Ultimately, however, this court will note that it is not within its purview to revisit issues of credibility. *Walters*, 127 F.3d at 528.

Mr. Foster also claims the ALJ failed to consider his impairments in combination. Impairments have been considered in combination when the ALJ refers to them in the plural (i.e., impairments), focuses the claimant's RFC on more than one impairment, and asks a hypothetical question that encompasses the impairments. *Loy v. Secretary of Health and Human Services*, 901 F.2d 1306, 1310 (6th Cir. 1990). The ALJ referred to Mr. Foster's impairments five times in his decision. [Tr. 49, 50, 52]. The ALJ focused Mr. Foster's RFC on his cervical, thoracic, and lumbar spine area, as well as his hypertension. [Tr. 288, 297-98]. Finally, the hypothetical questions the ALJ asked the vocational expert focused on Mr. Foster's degenerative changes in his cervical, thoracic, and lumbar spine area, as well as his hypertension. [*Id.*]. Based on the Sixth Circuit framework, the ALJ considered Mr. Foster's impairments in combination.

Finally, Mr. Foster asks in the alternative for a remand pursuant to sentence six of 42 U.S.C. § 405(g) for the consideration of new evidence. This court may remand

this case to the Commissioner upon a showing by Mr. Foster that this new evidence is material to his case and that there was good cause for his failure to include this evidence earlier. 42 U.S.C. § 405 (g). Evidence is new only when it was not in existence *and* not available prior to an ALJ's decision. *Sullivan v. Finkelstein*, 496 U.S. 617, 626 (1990). Evidence is material if there is a reasonable probability the ALJ would have reached a different decision had the additional evidence been presented. *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001).

The additional evidence was in four parts. The first part was a letter from Mr. Foster concerning his testimony at his administrative hearing. [Tr. 256]. The letter seeks to clear up any confusion the ALJ might have had about some of Mr. Foster's statements about his son. The ALJ found that some of Mr. Foster's statements about his son eroded his credibility. While this evidence is new, it is not material because it is not likely to change the ALJ's decision. Even if the ALJ accepted the letter as true, the ALJ still had other substantial evidence to doubt Mr. Foster's credibility.

The second piece of evidence is the result of an October 2003 EMG/Nerve Conduction Velocity Study conducted on Mr. Foster. [Tr. 257-58]. The impression left by the study was "chronic, remote, lumbrosacral radiculopathy affect[ing] any one of the left L4 through S1 nerve roots." [Tr. 258]. Mr. Foster has not provided this court with any reasons for good cause why this evidence was not available at the time

9

of his administrative hearing.

The third piece of evidence is records from The Veterans Administration Medical Center [VA] ranging from April 2004 to May 2004. [Tr. 11-34]. This evidence includes documents from the VA which state that Mr. Foster's physical examination was normal and that he had a Global Assessment of Functioning [GAF] score of 65. [Tr. 31, 32-33]. This evidence is not material because it is not likely to have affected the ALJ's decision. Mr. Foster's physical condition was normal, and a GAF of 65 indicates some mild symptoms or some difficulty in social, occupational, or school functioning. But, such a person is generally functioning pretty well and has some meaningful interpersonal relations.[1]

Finally, Mr. Foster also submitted a form completed in June 2004 by a nurse practitioner. [Tr. 36-38]. The nurse practitioner indicated Mr. Foster could occasionally lift five pounds and frequently lift less than five pounds. [Tr. 36]. He could stand/walk for one hour in an eight-hour day and sit for less than four hours in an eight-hour workday. [Tr. 36-37]. He could also never climb, stoop, crouch, or crawl and should be restricted from environmental factors like heights, moving machinery, temperature extremes, and vibration. [Tr. 37]. Again, Mr. Foster fails to provide

---

[1] See *Diagnostic and Statistical Manual of Mental Disorders Fourth Edition.*

evidence of good cause why this evidence was not presented earlier. However, even if good cause were produced, this evidence is not material because the ALJ most likely would have dismissed the nurse practitioner's opinion for two reasons. First, as a nurse practitioner, she is not a treating source, and her opinion is not entitled to a controlling weight. *See* 20 C.F.R. § 404.1513(a). Second, the nurse practitioner's opinion is far out of sync with the other opinions in the medical record.

Accordingly, Mr. Foster's motion for summary judgment will be denied, the defendant's motion for summary judgment will be granted, and this action will be dismissed.

An appropriate order will follow.

ENTER:

                                  s/Thomas Gray Hull
                                  THOMAS GRAY HULL
                                    SENIOR U. S. DISTRICT JUDGE